estate; and this opinion is supported by great and re-
spectable authorities, *Bracton* and many others; and
Blackstone cites a decision of *Finch*, in the time of
*Charles I.* (which was about the time our charter was
granted) in support of this opinion. The advocates for
the contrary doctrine adopt the opinion of Lord
*Coke*, which I have presumed to controvert on the au-
thority of *Bracton* and Judge *Blackstone*, and for the rea-
sons I have assigned. Upon the whole, I am of opinion
that the plaintiff in this case is entitled to one third part
of the personal estate of her husband, after deducting
the debts and funeral charges.

MAY 1798.

Griffith
vs.
Griffith's ex-
ecutors.

GOLDSBOROUGH, Ch. J. and DUVALL, J. concurred
in this opinion.

JUDGMENT upon the case stated for the plaintiff. The
defendants appealed to the court of appeals; and the
judgment of the general court was *affirmed* in the Court
of Appeals at November term, 1801.

MARTIN, (Attorney-General,) and HOLLINGSWORTH,
for the appellants.

A. HALL, KEY, and WINCHESTER, for the appellee.

## GENERAL COURT, MAY TERM, 1798.

### RIDGELY's Lessee *vs.* OGLE and LEONARD.

EJECTMENT for part of a tract of land called *The Le-
vel*, lying in Anne-Arundel county, containing 100 acres.
The defendants pleaded *non cul.* and took defence on war-
rant. Issue joined and plots returned.

THE PLAINTIFF at the trial, to make title to the land
in the declaration mentioned, read in evidence to the
jury patents for the following lands, viz. *The Level*, grant-
ed to *John Cross* on the 6th of October 1683, for 264
acres; and *Hill's Delight*, granted to *Henry Hill* on the
10th of June 1736, for 621 acres; also a certificate and
patent for a tract of land surveyed for *Zephaniah Smith*,
on the 21st of June 1650, and granted to *Richard Owen*
on the 12th of February 1658, for 585 acres; also a cer-
tificate and patent for a tract of land surveyed for *Ze-
phaniah Smith* on the 27th of November 1651, and pa-
tented to *Richard Owen* on the 12th of February 1658,
for 685 acres. All which surveys and patents were lo-
cated by the plaintiff on the plots returned in this cause,
and which, together with the explanations thereof, were
read in evidence to the jury.

The plaintiff also read in evidence to the jury, inden-
tures of bargain and sale, duly executed, acknowledged

and recorded, from *John Cross,* the original patentee of the said land called *The Level,* to *Robert Johnson,* dated the 12th of August 1700, for 100 acres part of the said tract of land; and from *John Cross* and *Robert Johnson* to *Absalom Ridgely,* the lessor of the plaintiff, dated the 27th of April 1795, for the said 100 acres part of the said tract of land called *The Level.* Which said two deeds the plaintiff located on the said plots, and read the said locations thereof in evidence to the jury.

The plaintiff then offered evidence to the jury, to prove that *John Cross,* in the last mentioned deed named, is the heir at law of *John Cross* the original patentee of the said land called *The Level;* and that *Robert Johnson,* in the last mentioned deed named, is the heir at law of *Robert Johnson* first named, the person mentioned in the deed from *John Cross* the original patentee of the land called *The Level.*

The plaintiff then offered evidence to the jury to prove that the said deed of bargain and sale from *Cross* and *Johnson,* to *Ridgely,* the lessor of the plaintiff, was signed, sealed and delivered, by the said *Cross* and *Johnson,* at the place upon the plots at figure 16, as marked upon the said plots, and within the lines of the land mentioned, contained and described in the said deed from the said *Cross* and *Johnson* to the said *Ridgely,* and within the lines of the said land called *The Level*—and that the said *Cross* and *Johnson,* at the time of executing the said deed to the said *Ridgely.* did deliver actual seisin of the land contained in the said deed, to the said *Ridgely.*

The plaintiff also offered evidence to the jury to prove that the true original locations of the land surveyed for *Zephaniah Smith* on the 21st of June 1650, and on the 27th of November 1651, and the land called *The Level,* are according to the plaintiff's locations thereof, on the plots returned in this cause; also that the true original location of the said deed from *Cross* and *Johnson* to *Ridgely,* is as the same is located by the plaintiff on the said plots; also that the true original location of the land called *Hill's Delight* is as the plaintiff has located the same upon the said plots.

The plaintiff gave in evidence to the jury, that all the land by him claimed in this action, and included in the deed from *Cross* and *Johnson* to *Ridgely,* located as is herein before stated, is, and always has been, in woods and unenclosed, except so much thereof as is included within the dotted lines numbered 16, &c. and except so much as is also included within the lines from 1 to 36, &c. and that those two parcels of land have both been cleared and enclosed by the defendants within less than fourteen years from this time; and that since the bring-

ing of this action, the said defendants have taken away the fence from around the said two parcels of land, and that the same are now unenclosed.

The plaintiff then read in evidence to the jury, the copies of sundry indentures, duly executed, acknowledged and recorded, viz. from *John Cross*, the original patentee, and *Eleanor* his wife, to *Thomas Reynolds*, dated the 28th of October 1701, for the residue of the tract of land called *The Level*, (100 acres whereof had been sold to *Robert Johnson*) being 164 acres; from the said *Thomas Reynolds*, and *Sarah* his wife, to *Joseph Hill*, dated the 10th of March 1701–2, for the said part conveyed by the said *Cross* to the said *Reynolds*; from the said *Joseph Hill* to *Henry Hill*, (the patentee of the land called *Hill's Delight*) dated the 12th of May 1713, for the said last mentioned part of the said land called *The Level*; and from the said *Henry Hill* to *William Thomas*, dated the 6th of December 1764, for the said last mentioned part of the said tract of land.

The plaintiff then offered to prove to the jury, that *Mary*, the wife of *Joseph Leonard*, one of the defendants, is the heir at law of the said *William Thomas*, and that the said *William Thomas* is dead.

The plaintiff, to prove that the aforesaid *Henry Hill* admitted that a part of the said land called *The Level* did not belong to him the said *Hill*, offered a witness, to wit, *John Gilliss*, the grand-son of the said *Hill*, who swore, that in a conversation which he had with *Joseph Hill*, his uncle, and son of the said *Henry Hill*, about the year 1740, respecting an ejectment between one *Hill*, the then holder of the land called *Hill's Delight*, and part of the said land called *The Level*, and one *Watkins*, which was then depending, the said *Joseph Hill* told him, that the said *Henry Hill*, grand-father of the witness, never did claim the whole of the said tract of land called *The Level*. The said *Gilliss* further proved, that the said *Joseph Hill* has been dead many years.

The Defendants, to support the issue on their part, offered in evidence and read to the jury the following deeds, duly executed, acknowledged and recorded, viz. from *William Jones* to *James Heath*, dated the 18th of July 1710, for two tracts of land granted to *Richard Owen* on the 12th of February 1658; from the said *James Heath* to *Joseph Hill*, dated the 14th of March 1710, for the said last mentioned two tracts of land, and from the said *Joseph Hill* to *Henry Hill*, dated the 12th of May 1713, to shew title in the said *Henry Hill* to the tract of land called *Smith's Neck*. And also offered evidence to prove, that the said *William Jones* was heir at law to *Richard Owen*, the patentee of the said

MAY 1798.

Ridgely's lessee
vs.
Ogle & Leonard.

land, by the recital in the deed from the said *Heath* to the said *Joseph Hill*; and also by proving the said tract of land to have been held by the said *Joseph Hill*, and those claiming under him, from the date of the said deed to the present day.

The defendants then read in evidence to the jury the patent aforesaid for the said land called *The Level*; also the deed from *John Cross*, and wife, to *Thomas Reynolds*; and the deed from the said *Reynolds* and wife to *Joseph Hill*; also the copy of the deed from the said *Joseph Hill* to *Henry Hill*, dated the 12th of May 1713, for the land called *Harness*, containing 400 acres, *Owen's land*, granted to *Richard Owen* the 12th of February 1658, for 585 acres, and 160 acres part of *The Level*; also the patent to *Henry Hill* for the land called *Hill's Delight*; and proved that *Henry Hill*, in the said patent mentioned, and *Henry Hill* in the deed from *Joseph Hill* mentioned, was one and the same person.

The defendants then gave in evidence to the jury the record, and plot and explanations, in an ejectment for *Smith's Neck*, brought in the provincial court in the year 1713, by the aforesaid *Joseph Hill*, lessee of *Henry Hill*, against the aforesaid *Robert Johnson*, (mentioned in the deed from *John Cross* to *Robert Johnson*;) and that in the said action of ejectment, the defendant, *Robert Johnson*, on the plots returned in the said cause, took defence for and located the 100 acres by him purchased from *John Cross*, in the same manner as the defendants in this cause have located the same on the plots in this cause, beginning, &c. and that the creek at the head of which figures 23 stand, was also known by the name of Enlargement Creek, and as such located by the said *Johnson* on the plots in the said cause.

The defendants further gave in evidence the record of a suit between the said *Robert Johnson*, and *Eleanor Cross*, administratrix of the before mentioned *John Cross*, stating a recovery in the provincial court of 50*l.* sterling, and 35*l.* 12*s.* 1*d.* current money damages, and 3355 pounds of tobacco costs, in an action of covenant to recover the consideration money paid by the said *Johnson* to the said *J. Cross*, for the said 100 acres, part of the land called *The Level*, the said *Johnson* having been therefrom ejected, &c. by the said *Hill's* Lessee. [*See the declaration in* 1 *Harr. Ent.* 526.]

The defendants further gave in evidence to the jury, a plot *(a)* and illustrations in an action of ejectment brought by the lessee of a certain *Thomas Watkins* against a certain *Joseph Hill*, wherein the tract of land called

*(a)* THE COURT said the plot was admissible in evidence, upon the same principle that hearsay is allowed to prove boundaries.

*The Level* was located as beginning at the figures 23 here-
in before referred to, and at the head of a creek then
considered and known by the name of Enlargement
Creek.

MAY 1798.

Ridgely's les-
see
vs.
Ogle & Leo-
nard.

The defendants further gave in evidence the location
of *Smith's Neck*, on the plots in the action of ejectment
between *Hill's* lessee and *Johnson*, and transferred to,
and located on the plots in this cause, from black 1, at
the head of Enlargement Creek, to a post at figures 10
at the head of Smith's Creek, to prove that the 100
acres of land, sold by the said *John Cross* to the said
*Robert Johnson*, was included in, and swallowed up by
the said tract of land called *Smith's Neck*, and that the
tract of land called *The Level* actually was originally
taken up and located at the place at figures 23, marked
on the plots in this cause.

The defendants further gave in evidence to the jury,
that from the time of the recovery in the action of eject-
ment first herein mentioned, to the day of the execution
of the deed from *Cross* and *Johnson* to *Ridgely*, the re-
coverer, *Joseph Hill*, and those claiming under him, have
held and occupied the lands so recovered—and also that
neither the said *Cross* or *Johnson*, who conveyed to the
said *Ridgely*, nor any of their ancestors, have at any time
since the recovery in the said ejectment, lived upon, or
in any manner used or occupied, any part of the tract
of land called *The Level*, as located either by the plain-
tiff or the defendants on the plots in this cause, or any
other land thereto adjoining. That the said *Cross* and
*Johnson*, and their respective ancestors, have ever since
the recovery aforesaid been residents of Anne-Arundel
county, and in the neighbourhood of the said land; and
that the said *Cross* and *Johnson*, who sold to the said
*Ridgely*, are between the ages of 50 and 60 years respec-
tively; and that *Joshua*, the father of the said *John Cross*,
who conveyed to the said *Ridgely*, died about the year
1760, and was at that time an old man, and was son of
the original patentee of the said land called *The Level*;
and also that the father of the said *Johnson* died about
the year 1767, and was an elderly man, and the son of
*Robert Johnson*, who purchased the said 100 acres of *John
Cross*, and against whom the said *Joseph Hill's* lessee re-
covered the said land.

The defendants also gave in evidence, that from the
time of the conveyance to *William Thomas*, and during
his possession, and ever since, those claiming under him
have use and enjoyed, without interruption, the land lo-
cated by the plaintiff for his pretensions on the plots in
this cause, by cutting wood and timber, getting rails,
and making tobacco beds thereon, from time to time as

they had occasion to do so; and that part of the same, as located on the plots, was actually under enclosures at the time this suit was brought, and for ten years or longer next preceding the commencement of this suit. That a house standing at figures 51 on the plots in this cause, was, 45 years ago, in the possession of *E. Edwards,* a tenant and overseer of the proprietors of *Smith's Neck,* and some time after, *B. Barry,* another overseer of one of the said proprietors, lived in the said house. *(a)*

The defendants then prayed the opinion of the court, and their direction to the jury, that upon the facts so offered in evidence, the plaintiff was not entitled to recover in this action.

*Martin* (Attorney General,) for the defendants, contended, that the recovery in the ejectment by *Henry Hill's* lessee *vs. Robert Johnson,* and the recovery by *Robert Johnson* against the administratrix of *John Cross,* precluded and estopped *Johnson,* or any person claiming under him, from recovering against the defendants in this cause, by virtue of a title under the deed from *Cross* to *Johnson.*

He stated, that the tract of land called *The Level* was patented in 1688, and has its beginning at a white oak standing at the head of Enlargement Creek, being the place of beginning of the tract called *Smith's Neck.* It cannot be presumed that *Johnson* did not know where the head of the creek was when he laid down *The Level* in the former ejectment, for there was then only 17 or 18 years between the time of the grant and the ejectment. The seller and buyer must have known very well where the land lay, and *Johnson* located *The Level* on the plots in the former ejectment, in the same manner as the defendants do now; laying the beginning at the same place. *Smith's Neck* had a different beginning from *The Level,* and therefore could not be controuled by *The Level.* The plots in the former ejectment are a solemn admission on record as to the location of the land, and according to *Johnson's* location, *The Level* is swallowed up in *Smith's Neck.* It is on that ground *Johnson* recovered back the purchase money from *Cross's* administratrix, who admitted in him the right to recover of her. *Johnson* having received a compensation for the land, he and those claiming under him, are therefore precluded by the recoveries. If the facts upon which the recoveries are grounded are not true, they

*(a)* THE COURT decided in this case, that where a certain object, as a fence, house, creek, &c. was designated on the plots, and known to the witness, he might give evidence of any cutting on, or user or cultivation of the land on the N. E. or in any other direction from the spot located on the plots.

cannot now be controverted. The location by *Johnson* in the former ejectment is his plea, and it is a matter of record, by which he is precluded from averring against that location. *Vernon's case*, 4 *Co.* 5. 10 *Vin. tit. Estoppel* 427, *c.* 2. *pl.* 2. Also *Co. Lit.* 352, to show that what is alleged to be true by the party shall not afterwards be contradicted.

*Mason*, for the plaintiff, contended, that there was no *estoppel*, and that the justice of the case was with the plaintiff. That the ejectment by *Hill's* lessee vs. *Johnson*, will not have the effect of an *estoppel* in this case. That *Johnson* is not concluded by the location made in that ejectment, but may controvert it; and that the location, although coupled with a subsequent recovery, will not estop. That every estoppel must conclude both parties and be reciprocal—*Co. Litt.* 352. *a.* That the cases in 4 *Co.* 5, and in 10 *Vin.* 427, are between privies.

He contended that the administratrix of *Cross* was neither a party, nor a privy, and that *Cross's* heir is not bound by the admissions of the administratrix—It is no evidence against *Cross's* heir, and it is not binding on *Johnson.* Who is it that claims the benefit of the estoppel? The present defendants are strangers and cannot take advantage of it. There can be no estoppel in ejectment. In real actions all persons interested are made parties by voucher. A judgment in ejectment is no bar, but it is evidence. If *Johnson* is estopped and barred, the land ought to go to *Cross.* The right ought to be revived in *Cross* if evicted from *Johnson.* *Cross* has the equitable title.

*Shaaff*, on the same side. The old ejectment was brought for *Smith's Neck*, and the defendant located *The Level* within the lines of *Smith's Neck.*

Estoppels are not favoured by the law, but must be taken strictly, for they prevent the party from alleging the truth. They must be reciprocal—3 *Com. Dig.* 271. A stranger shall not take advantage of the estoppel.

Suppose the fictitious lease in an ejectment was made by a real lessor to a real lessee, the act of the lessee could not affect the lessor. A second ejectment may be brought, and the trial of the first ejectment is not conclusive.

Suppose the question was only as to the title, the judgment in ejectment would not be conclusive. The verdict in the case of *Hill's* lessee *vs. Johnson* cannot transfer the right; and the verdict in favour of *Johnson* vs. *Cross's* administratrix, cannot injure or benefit the present defendants.

CHASE J. He who makes title to a tract of land, and is in possession of part, is in possession of the whole ac-

cording to the true limits and real position of the land.

The recovery in ejectment by *Hill's* lessee against *Robert Johnson*, in 1713, of the part of *The Level* conveyed to him by *John Cross*, being included in *Smith's Neck*, an elder tract, divested the possession out of *Johnson*, and vested the same in *Hill*; and *Robert Johnson*, and those claiming under him, never having been in possession since, and more than twenty years having elapsed since the recovery by *Hill* against *Johnson*, anterior to the bringing this ejectment, the court are of opinion that these facts, if found by the jury, are conclusive evidence of the location of the 100 acres, part of *The Level*, for which part this ejectment is brought, as made by the defendants, and that the plaintiff had no right of entry, and has failed in making out a title to recover the possession in this action.

The recovery by *Hill* vs. *Johnson* of the part of *The Level*, purchased by him of *John Cross*, in virtue of a title paramount to the title of *John Cross*, and *Johnson's* acquiescence under the same, was an eviction and divestment of the title out of *Robert Johnson*.

*Robert Johnson's* recovery of damages against the administratrix of *John Cross*, on the covenant for quiet enjoyment, in the deed from *Cross* to *Johnson*, with the concurrence of the preceding facts before recapitulated, operated to extinguish all right and title *Johnson* had in the said 100 acres part of *The Level*.

The acquiescence of *John Cross*, and his descendants, under the said recoveries, and their never having since resumed the possession of the said land, after such a lapse of time, have operated an extinguishment of all right and title in the said land in the said *John Cross*, and those deriving or claiming an interest under him.

THE COURT [*Goldsborough*, Ch. J. and *Chase*, J. *(a)*] caused the following opinions and directions to the jury to be entered in the bill of exceptions, taken in the cause, viz:

"THE COURT are of opinion, that the recovery in ejectment by *Henry Hill's* lessee against *Robert Johnson*, in the year 1713, of the 100 acres part of *The Level*, conveyed by *John Cross* to *Robert Johnson*, divested the possession out of the said *Johnson*; and the possession and right thereof were by the said judgment vested in the said *Henry Hill*. And further, that if the jury find the said *Robert Johnson*, and those claiming under him, have not been in possession of the said land since the

*(a) Duvall*, J. having been concerned as counsel for the plaintiff did not sit.

said judgment, the court are of opinion that the plaintiff in this action had no right of entry, and hath failed in making out a title to the said land in question.

"THE COURT are also of opinion, and so direct the jury, that the said recovery, and the recovery by *Robert Johnson* against the administratrix of *John Cross*, and the jury finding the said *Robert Johnson*, and those claiming and deriving title under him, have never been in possession of the said land since the said judgment and recovery in ejectment in 1713 by *Henry Hill's* lessee against *Robert Johnson*, that the same are conclusive evidence of the location of the said 100 acres part of *The Level*, as made by the defendant, *Robert Johnson*, on the plots in the said cause, and that the present plaintiff, for the causes aforesaid, is precluded and estopped from locating that part of *The Level* by him claimed as sold and conveyed by *John Cross* to *Robert Johnson*, by deed bearing date the 12th day of August 1700, as aforesaid, in any other manner than that in which the said *Robert Johnson* located the same on the aforesaid plots in the said ejectment between *Hill's* lessee and *Johnson* in the year 1713.

" AND THE COURT are further of opinion, and so direct the jury, that the entry by the aforesaid *John Cross* and *Robert Johnson*, on the 27th of April 1795, at the time and for the purpose of executing the aforesaid deed to *Absalom Ridgely*, and the livery of seisin so by them to him made of the lands claimed in the present ejectment by the plaintiff, is inoperative to support the plaintiff's title."

THE PLAINTIFF having excepted to the court's opinions, and the verdict and judgment being against him, he appealed to the court of appeals.

MAY 1798.

Ridgely's lessee
vs.
Ogle & Leonard.

IN THE COURT OF APPEALS.

*Shaaff* for the Appellant—This case arises on an ejectment for part of *The Level*, conveyed by *John Cross* the patentee, to *Robert Johnson*, and conveyed by the heirs of *John Cross* and *Robert Johnson* to the appellant.

The appellant (the plaintiff below,) proved that the grantors to the plaintiff are the heirs to *John Cross* and *Robert Johnson*, and that *John Cross* the patentee, by deed of October 1701, conveyed all *The Level* except 100 acres formerly conveyed by *Robert Johnson* to *Thomas Reynolds*.

This land was also conveyed to *Henry Hill* and to *William Thomas*, excepting the 100 acres.

The defendants proved *Smith's Neck* to have been conveyed to *Joseph Hill*, and by him to *Henry Hill*, 12th May 1713. Also a judgment and verdict by *Henry Hill's*

lessee against *Robert Johnson,* on the 13th of October 1713, in which *Johnson* located the land as the defendants do in this suit.

After this judgment, viz. 1st May 1716, *Robert Johnson* by judgment and verdict, recovered the value of the land from *Eleanor Cross,* administratrix of the patentee *John Cross.*

The defendants gave in evidence the plot and explanations in an ejectment by *Thomas Watkins's* lessee against *Joseph Hill.* That *Smith's Neck* swallowed up *The Level;* that from the time of the recovery by *Henry Hill,* he and those claiming under him, held the land so recovered; that *Johnson,* &c. never used the same; and that from the time of the recovery the recoverer has used the land by cutting timber thereon.

The amount of this statement is—that the plaintiff proved a title to him by deed from the heir both of *Cross* the patentee, and *Johnson,* for 100 acres of *The Level;* and offered to prove the *true location* as he contends.

The defendants, to rebut his title, and to prevent him from proving the truth of such location, traced a title in *Smith's Neck* to *Henry Hill,* and also of *The Level,* except 100 acres conveyed to *Robert Johnson.* The first conveyance to *Reynolds* is the 28th of October 1701.

Also a recovery in ejectment by *Henry Hill's* lessee against *Robert Johnson,* in October 1713, in which the 100 acres are located as the defendants do in this case; and a recovery by *Johnson vs. Cross's* administratrix, in May 1716, for the value of the land; and possession of the land recovered by the recoverer, &c. &c.

The *opinion* of the General Court may be divided into two parts—

FIRST PART—That the recovery by *Hill* in 1713, against *Johnson,* divested the right of possession out of *Johnson,* and vested the possession and right thereof in *Hill;* and if *Johnson,* and those claiming under him, have not been in possession of the said land since the recovery, that the plaintiff in this action has failed to make title to the *said* land *in question.*

SECOND PART—That the said recovery, and the recovery by *Johnson* against *Cross's* administratrix, are conclusive evidence of the location of the land sold to *Johnson,* and the plaintiff is estopped to locate it different from the said ejectment.

I will consider the case in the same manner the court have given their opinion.

1. The verdict and judgment in the case of *Hill's* lessee vs. *Johnson,* was for *Smith's Neck,* which in that ejectment was located as in this cause; and *Johnson* there located his 100 acres in *Smith's Neck,* according to *Hill's*

location; by that judgment no land except *Smith's Neck* could be recovered.

In the present case *The Level*, and the 100 acres, are located wholly to the northward of *Smith's Neck.* The plaintiff's claim is for land wholly different from that which was claimed in the former ejectment.

The former recovery then can give no right of possession to the land in question in this suit, because wholly different land—This seems self evident. But it may be said, that the court, by their opinion that the plaintiff had not made title to the *said* land in question, meant the land in question in the former ejectment of *Hill* and *Johnson.* This cannot be, because no point; for the plaintiff does not here claim the land situated as in that cause —He pretends no title to any such.

Then admitting that the plaintiff's locations are true, (and he offered to prove it, and the court cannot judge of the propriety of such location,) the court have said that the recovery of land in one place has vested a right to land in another.

The court's opinion seems clearly wrong in this respect.

2. I will consider the case of the ejectment, and then the recovery of *Johnson* against *Cross's* administratrix.

It is obvious that the deed was wrong located in that ejectment.

And the manner in which the mistake happened is apparent from the certificate and return of the surveyor. The third line of the deed to *Johnson* from *Cross,* is a N. & by W. course 186 perches. The land is laid down W. & by N. course. Now, even if the land begins, as the defendants locate it and run the courses of the deed, the plaintiff must recover.

The form and shape of the land are different, and if the true lines of the deed were run even from the point the defendants locate it the plaintiff must recover.

This deed could only be laid down for illustration; it was wholly immaterial whether it was laid down or not, because the suit being brought for *Smith's Neck,* the eldest tract, the whole case depended on the true location of that land.

It is of the greatest importance that this decision should be well weighed, because it must go far to prove that a recovery in ejectment is a bar.

*Estoppels* go to prevent the party from saying the truth; are to be taken strictly, and are considered odious—10 *Vin.* 423. 4 *Bac.* 106—must be mutual, and no person, but a party, privy, &c. can take advantage of it—a stranger cannot—*Co. Lit.* 352. 3 *Com. Dig.* 271. 4 *Bac. Ab.* 106. 10 *Vin.* 447, 450. From this principle, a judgment and proceeding in ejectment are no bar.

MAY 1798.

Ridgely's lessee
vs.
Ogle & Leonard.

May 1798.

Ridgely's les-
see
vs.
Ogle & Leo-
nard.

When ejectment was a real proceeding, there was an actual lessee, of course the lessor being a stranger could not be bound by it, and of course he could not take advantage of it.

The same reason prevailed when ejectment was put into its present form—19 *Vin.* 321.

It is now settled law, that a verdict and judgment in ejectment are no bar.—*Run. on Eject.* 5, &c.

If this is the case, the judgment must be wrong, because the opinion is that *the recovery* is conclusive.

If the judgment is no bar, it cannot be conceived that any part of the proceedings can be. The plots are part of the proceedings.

If the ejectment is no bar, the verdict and judgment against *Cross's* administratrix cannot be; *because the defendants are strangers to that verdict and judgment.*

Those under whom the defendants claim, do so under a deed from *Cross* in 1701. In 1716 this verdict was had. It was out of the power of *Cross's* representatives to do any act to injure the defendants ancestors, after the deed in 1701; and of consequence they cannot take advantage of the estoppel.

This reason would apply even if the recovery was had against the heir of *Cross*, because the party claimed the land under a conveyance before the verdict, &c. But here the recovery was against the administratrix, who had nothing to do with the land, and from whom the defendants do not claim.

It is inconceivable on what principle this recovery can have the effect to give title to the defendants. Wherever the true location of *The Level* is, there are 100 acres of land sold to *Johnson,* and not conveyed to *Henry Hill.*

If the recovery against *Cross's* administratrix has any effect, it can only vest it in *Cross's* heirs, not in *Hill's,* who never paid for it to any one. The plaintiff makes his title through both *Johnson* and *Cross.*

All these proceedings might have been evidence, strong evidence, against the plaintiff, but no bar.

From hence it follows, that the ejectment and the locations therein are not sufficient to bar the party; and that the recovery of *Johnson* against *Cross* cannot bar the plaintiff.

If one has a good defence, and joins with one who has none, he loses the benefit of it—*Stra.* 509. 994.

In this case *Benjamin Ogle,* one of the defendants, is not stated by the bill of exceptions to claim under *Cross* or *Johnson,* and therefore wholly a stranger to the proceedings, of course cannot take advantage of such estoppel.

It must be acknowledged that a stranger cannot take advantage of an estoppel, of consequence Mr. *Ogle*, being as far as appears from this record an entire stranger, he could not have pleaded it. Then even admitting that under *not guilty* in ejectment, this estoppel may be given in evidence, yet it surely must be allowed that it cannot be taken advantage of in evidence by a person who could not have pleaded it.

This then surely proves that the opinion of the court is wrong, because they have said that the plaintiff is not entitled to recover from Mr. *Ogle*.

*Ogle* and *Leonard* being joined in one action, and having a joint defence, if void as to one, is void as to the whole.—*Stra*. 509, 994, 1184.

This principal may prove that *Leonard* has waved the benefit of any advantage resulting from this cause, but cannot give Mr. *Ogle* any advantage.

If it should be contended that any defendant may shew that the plaintiff in ejectment has no title, it is but begging the question; because you must first shew that the defendants can take advantage of the estoppel. This proceeding does not take from the plaintiff any right, but only, it is contended, *precludes* him from shewing it.

*Mason* on the same side. (a)

*Martin*, (Attorney General) and *Key*, for the appellees. (a)

THE COURT OF APPEALS *affirmed* the judgment of the general court, at June term, 1800.

## GENERAL COURT, MAY TERM, 1798.

### MACKUBIN *vs.* WHETCROFT.

THIS was an action of *debt* by a *devisee*, for rent due on a lease, against a surviving lessee. [See the form of the declaration in 1 *Harris's Entries*, 611.] The demise is stated to have been made on the 3d of June 1774, by *Richard Mackubin*, (the lessor and devisor,) in his lifetime, to *James Higginson*, (deceased) in his life-time, and the present defendant, of a lot of ground in the city of Annapolis, for the term of 99 years, renewable forever, at the yearly rent of 45l. payable on the 11th of July in each year. That the lessor and devisor made his will, and died in 1778; that 315l. was in arrear, be-

(a) Notes of the arguments of these gentlemen in the court of appeals, have not been obtained.