# MISSLER *v.* ANNE ARUNDEL COUNTY

[No. 123, September Term, 1973.]

*Decided January 29, 1974.*

The cause was argued before BARNES, MCWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*William J. Boehm* for appellant.

*John M. Court, Assistant County Solicitor,* with whom was *Paul F. Borden, County Solicitor,* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

This equity action was filed in the Circuit Court for Anne Arundel County by Earl B. Missler, the appellant and cross-appellee, naming Anne Arundel County, appellee and cross-appellant, as defendant. Throughout this protracted litigation, the appellant has advanced and subsequently abandoned several varied but interrelated legal theories in pursuit of recovery from the county moneys he was required to deposit with the Anne Arundel County Sanitary Commission in order to obtain the construction of a sewer main. However, since most of these sundry contentions have been forsaken by Missler at one point or another during this litigation, we shall not relate them here but instead proceed to briefly set out the facts involved in the controversy and then synthesize the issues in an effort to bring order to what the parties agree has become procedurally quite confusing.

The events which comprise the background for this suit

began to unfold in 1960 when appellant, as the owner and developer of a parcel of real estate located on Nursery Road near the Baltimore-Washington Expressway in Anne Arundel County, required a sewer main. In an effort to obtain this service which today is in short supply in many parts of this State, Missler began negotiations with the sanitary commission to obtain an extension of one of the pre-existing lines located some 2,000 feet away. When it appeared from an evaluation of the potentially assessable properties to be served by the proposed main that this would not be a self-sustaining project for at least a number of years, the county and appellant entered into the deficit financing agreement which was to become the epicenter for this dispute. Because of its obvious importance we set forth that agreement except for the execution portion:

## DEFICIT DEPOSIT AGREEMENT

## ANNE ARUNDEL COUNTY SANITARY COMMISSION

THIS AGREEMENT, made this 14th day of December, 1960 by and between Earl B. Missler hereinafter called the Petitioner, of the first part, and the Anne Arundel County Sanitary Commission, a municipal corporation, hereinafter called the Commission, of the second part.

WHEREAS, the Petitioner has requested the Commission to construct and install sewer pipes in Nursery Road, Overlook as per Plat on Project No. 60-5-45-S attached hereto; and

WHEREAS, the Commission is willing to install said pipes, subject, however, to the terms and conditions hereinafter set forth.

NOW, THEREFORE, THIS AGREEMENT WITNESSETH, That in consideration of the premises and of the mutual promises hereinafter contained, the parties hereto do promise and agree as follows:

1. The project herein referred to shall be designed and constructed under the supervision of

the Chief Engineer of the Anne Arundel County Sanitary Commission.

2. Before the work of constructing the said project will be authorized by the Commission, the Petitioner must deposit with the Commission and in favor of the Sanitary District the sum of Sixty-four Thousand One Hundred Forty-eight and 24/100 Dollars, which sum represents that part of the construction cost of said project which will not, within a reasonable time after completion thereof, be supported by income from front foot benefit assessments considered at the time of the proposed construction to be subject to levy, plus a 15% charge for administering this Agreement, all as estimated by the Treasurer of the Anne Arundel County Sanitary Commission.

3. After completion of the work of constructing the said project, there shall be an adjustment of funds so as to provide that the amount of the deposit shall equal the actual deficit, plus 15%, as determined from actual costs insofar as they can be ascertained, including Engineering and Administrative overhead expense incurred by the Anne Arundel County Sanitary Commission.

4. This Agreement shall remain in effect for a period of six years from the date hereof, unless terminated prior thereto by mutual agreement of the parties hereto, in which case a Release from the Petitioner to the Commission will be required of the Petitioner.

5. This Agreement will be reviewed every two years for the purpose of making refunds to the Petitioner from the amount deposited hereunder and, if it then appears that lots or portions of the locality which were not considered to be assessable for benefits at the time of construction are connected to the said project, resulting in additional benefit assessments not previously considered, the aforementioned deposit may be reduced by a refund

to the Petitioner in a proportion to be determined on the basis of the capitalized income from the front foot benefit assessments; provided, however, that the total assessable frontage as finally determined must produce sufficient income to finance the installation herein described. If such income be insufficient to finance the cost of installation, the Petitioner shall not be entitled to a full refund of the deposit, but the Commission will be entitled to deduct the deficiency so calculated before making the final refund.

6. The Petitioner agrees upon completion of the work of constructing this project to accept and pay the first class rate on each and every lot abutting on the water and/or sewer facilities constructed as per the plats attached hereto.

7. If lots or portions of the locality are connected to the project, front foot benefit assessments will be levied in accordance with the Code of Public Local Laws of Anne Arundel County, Sections 486-537, inclusive, as pertains to the Anne Arundel County Sanitary Commission. The Commission shall exercise their discretion in determining the extent of the frontage applicable to each property connected for the purpose of fixing the amount of the refund to Petitioner from time to time.

8. After the expiration of six years from the date of this Agreement, the amount of the deposit which remains after final review of the Agreement by the Treasurer shall be automatically transferred to the Anne Arundel County Sanitary Commission Capital Fund.

9. All financial adjustments between the Commission and the Petitioner shall be made during the month of January, based on calculations as of October 1st of the preceding year.

10. It is understood and agreed that this Agreement shall be binding upon the parties

hereto, their heirs, personal representatives, successors and assigns.

Throughout this litigation, the appellant has maintained that all his sewage disposal requirements could have been met by the construction of an eight inch main rather than the twelve inch line which the commission accepted bids for and built. Missler relies on this fact as being strong evidence in support of his contention that the contract provides that he shall receive a refund up to the full amount of his deposit for *all* but the original lots which were subsequently assessed as a result of being connected to this new line or any extension thereof during the six-year term of the agreement. Why else, he argues, would he be required to pay for the part of a sewerage system which exceeded his needs but for the fact that it was contemplated that he receive a refund of his deficit deposit from the commission when all who subsequently reaped the benefits of the increased capacity were assessed their fair share?

Following payment of the $64,148.24 estimated deficit required to be deposited under the agreement, work on the line was commenced and proceeded without interruption until completion in May of 1961. At that time, the final financial analysis of the project revealed that there had been a substantial cost overrun. Accordingly, relying on paragraph number 3 of the agreement, the commission made a demand upon Missler for an additional $16,367.29. When this request was not met, the commission filed an action at law in the Superior Court of Baltimore City on September 14, 1962 to recover that amount. The pleadings filed in that case included a motion for summary judgment made by the commission. However, before the court acted upon this motion, the parties were able to compromise their differences with Missler paying $5,540.71 to the sanitary commission and, on June 16, 1963, at the written direction of the plaintiff's attorney, the clerk of the court entered the suit paid, settled and satisfied.[1]

---

1. For the authority of the clerk to file all papers delivered to him for that purpose see Maryland Code (1957, 1973 Repl. Vol.) Art. 17, § 1; and, for the authority of the clerk to enter a judgment satisfied upon an order in writing of the plaintiff see Md. Rule 603 a.

This spirit of compromise which had concluded the Baltimore case was shattered in November of 1966 when appellant became acquainted with the county's [2] intent to use the line, without any refund to him, as an interceptor for sewage to flow from an area a short distance to the south of his project. Aghast at the thought that he would not be reimbursed in accordance with his interpretation of paragraph number 5 of the agreement, appellant initiated this action by filing a "Bill of Complaint to Reform Contract" [3] in an effort to recover all or part of his deficit deposit. At the trial, Judge E. Mackall Childs first rejected the county's contention that Missler's claim was barred by the doctrine of res judicata because of the final judgment entered in the Baltimore City case. Consequently, the judge, having considered all of the evidence, held that although there was no provision in the contract for the funding of this project through future extensions beyond the locality of the Missler development, a final review of the financial status of appellant's deposit showed that the sum of $1,944.55 was due "computed on the same basis as was the settlement in the Superior Court of Baltimore City." Accordingly, utilizing the general relief prayer contained in the complaint, Judge Childs signed a decree which awarded the developer damages in that amount. For the reasons which follow, we shall

---

**2.** In July 1965, with the adoption of the Anne Arundel County Charter, the Sanitary Commission was abolished and its duties, responsibilities and obligations were transferred to the county's Department of Public Works. No one in this case questions the fact that the county as the commission's successor has assumed its contractual obligations.

**3.** The prayers for relief contained in the complaint request the court:

"(a) To reform the original Deficit Deposit Agreement to provide for reimbursement of the Deficit Deposit Agreement money upon the sewer line being utilized as an interceptor line for new area not contemplated by the original contract.

"(b) To reform the original Deficit Deposit Agreement to the effect that if said sewer line is being utilized by other areas and said other areas are being or can be assessed according to law to support the construction and maintenance costs of said sewer line, that the deficit deposit with the Commission is no longer needed as provided for in the original Deficit Deposit Agreement and that said deficit deposit be returned to the Complainant.

"(c) And for such other and further relief as his cause in equity may require."

remand the case without affirmance or reversal for further proceedings to be conducted in the light of this opinion. Maryland Rule 871 a.

Although, as previously mentioned, throughout this litigation the appellant has created extensive confusion by raising and then subsequently either partially or completely abandoning several theories for recovery, at oral argument in this Court his attorney has made clear what in fact Missler is presently contending. Rather than pursuing his original request for reformation, appellant now urges that a proper construction of the contract as written (in particular paragraph number 5) demonstrates that he is entitled to a return of his entire deposit and that the trial court should have ordered this refund under the prayer for general relief. The county, on the other hand, throughout this action, in addition to construing the contract differently, has consistently argued that the doctrine of res judicata bars any recovery on any theory.

As much of the controversy now before us can be disposed of by first considering the county's res judicata contention, we deal with that question at this time. The doctrine of res judicata was succinctly delineated by this Court in *Pat Perusse Realty v. Lingo*, 249 Md. 33, 35, 238 A. 2d 100 (1968), where we said:

> "The basic rule of res judicata is that facts or questions which were in issue [or which might have with propriety been placed in issue but were not, *Alvey v. Alvey*, 225 Md. 386, 171 A. 2d 92 (1961)] in a previous action and were [or could have been] therein determined by a court which had jurisdiction of the parties and the subject matter are conclusively settled by a final judgment in the first case and may not again be litigated in a subsequent action between the same parties or their privies even though the subsequent suit takes a different form or is based on a different cause of action."

As a bar to a portion of appellant's claim, the county's

reliance on this doctrine is well placed. We say this because in Maryland when a law action is terminated by the entry on the docket "paid, settled and satisfied" made at the direction of the plaintiff, although executed by the clerk's hand, it is done under the eye and with the sanction of the court, and must accordingly be taken as a judicial act no longer open to question or controversy in any collateral proceeding. Indeed, the entry settled and satisfied on the docket constitutes an "exhaustion of the right of action on that obligation." *Tabler v. Castle*, 22 Md. 94 (1864); *accord, Clark v. Southern Can Co.*, 116 Md. 85, 81 A. 271 (1911). Or, as was stated for this Court by Chief Judge Hammond in *Corey v. Carback*, 201 Md. 389, 402, 94 A. 2d 629 (1953), "[a]n entry 'agreed and settled' [or its equivalent — 'paid, settled and satisfied'] has the effect of a judgment and may be stricken out by the court only after a direct proceeding for that purpose." Clearly then, that which was the subject of the Baltimore suit involving the same parties as those engaged in combat in this case is barred from being relitigated here, even though the present suit may be based upon a different cause of action. *Pat Perusse Realty v. Lingo, supra.* To determine what was finally resolved in the Baltimore suit and thereby ascertain what is precluded from being relitigated, we review the pleadings which were filed in the former cause and which are included as part of the record here. From these documents it is clear that a determination of what the parties had promised by entering into the contract was the subject of that suit. Accordingly, with the entry of a final judgment there, any question as to whether appellant deposited too much or whether as a result of some breach on the part of the county he was not required to make an additional deficit deposit (or for that matter any deposit at all), having been thus judicially determined, is no longer open to dispute here. For this reason, we need not discuss appellant's contention that by failing to issue the bonds purportedly contemplated by the contract the county breached its promise.

Unfortunately for appellant, from our examination of the record we conclude that he is prohibited from relitigating

some of the other issues raised here as well. Any claim for money owed in accordance with the refund provisions contained in paragraph number 5 which had accrued at the time of the Baltimore settlement was, we think, likewise conclusively determined by entry of the final judgment in that case. This is true because Missler in answer to the county's declaration filed the general issue plea and by so doing actually placed this matter in issue. It is well settled in this State that any claim which a defendant had growing out of the same transaction or occurrence that is set out in the declaration may be recouped under this plea to the extent of the plaintiff's claim. *Holloway v. Chrysler Credit Corp.*, 251 Md. 65, 246 A. 2d 265 (1968); *Eisenberg, Admin. v. Air Cond., Inc.*, 225 Md. 324, 170 A. 2d 743 (1961); *District Agency Co. v. Suburban*, 224 Md. 364, 167 A. 2d 874 (1961). Therefore, any demand for a refund which could have arisen because of new assessments made during the first two-year review period has been settled by the Baltimore suit and cannot again be litigated. In fact, Missler's affidavit in opposition to the commission's motion for summary judgment filed in that action specifically resisted the county's claim for this very reason by alleging:

"that in paragraph 5 of said agreement, which has been attached as Plaintiff's Exhibit No. 1, it obligated the Plaintiff to review the agreement and make refunds, that the deficit deposit agreement is dated December 14, 1960 and before this matter can be heard more than two years will have elapsed, and in accordance with paragraph 5, a refund will be due to the petitioner therein, and the amount of money alleged to be due and owing would not be due and owing without such an accounting."

Barred from relitigating these matters and having abandoned his request for reformation, appellant's sole remaining theory of recovery is that he is entitled to a refund if "lots or portions of the locality which were not considered to be assessable for benefits at the time of construction are connected to the said project [(necessarily by our decision subsequent to the first two-year review)],

resulting in additional benefit assessments not previously considered . . . ." (quoted from paragraph number 5). He reasons that the trial court's award of $1,944.55 does not accurately reflect the amount owed to him under paragraph number 5 of the deficit deposit agreement. Appellant therefore asks this Court to remand the proceedings for a determination of the proper amount due. We agree that a remand is in order but our reasons do not entirely coincide with those of the appellant. In the first place, we are unable to determine from the record if Missler's award reflected an allowance for lots which became assessable during the first two-year review period. If it did, because of our view on the res judicata question, such an award would be improper. In addition, we do not agree with the trial judge that paragraph number 5 is clear and unambiguous in all its terms. When, as we think exists in this case, doubt arises from the writing itself as to what the parties meant by the language employed, extraneous evidence of what the words and actions of the parties would reasonably induce another to believe was intended may be admitted to assist the court in determining what was in fact agreed to by the parties. *Allen v. Steinberg*, 244 Md. 119, 127, 223 A. 2d 240 (1966); *McKeever v. Realty Corp.*, 183 Md. 216, 37 A. 2d 305 (1944). This in no way controverts the principle that the written language embodying the terms of an agreement alone will govern the rights of the parties irrespective of their subjective intent if that language is, on its face, clear and unambiguous. *Kasten Constr. v. Rod Enterprises*, 268 Md. 318, 328, 301 A. 2d 12 (1973). It is unclear to us what "portions of the locality" the agreement refers to. Furthermore, from the four corners of the document itself we cannot tell what the parties meant by using the words "not considered assessable". Does this contemplate a change in land use or in topography in the immediate area of the line such that additional assessment would result; or, as appellant contends, does this include an area which was subsequently assessed as a result of extending this line; or, does it mean neither of them or both? Accordingly, we remand this case to the trial court for consideration of any available testimony which may be received as an aid in

determining what the parties agreed to when they chose these phrases. If appellant can demonstrate that the agreement encompasses assessments which have developed since the first two-year review but have not been accounted for by an appropriate refund, he is entitled to recover, under the general relief clause prayed in his bill, any amount found to be due under the contract. This is so despite the fact that his original bill was for reformation. *Charles Co. Broadcasting v. Meares,* 270 Md. 321, 311 A. 2d 27 (1973); *McKeever v. Realty Corp., supra; Powell v. Young,* 45 Md. 494 (1877).

> *Case remanded to the trial court without affirmance or reversal for further proceedings not inconsistent with this opinion.*
>
> *Costs in this Court and in the trial court to abide the final result.*