608 A.2d 828

**DELEON ENTERPRISES, INC.**

v.

**Beverly ZAINO, Personal Representative of the Estate of Sophie Kramer aka Sophie Kramer Roth, et al.**

**Beverly ZAINO, Personal Representative of the Estate of Sophie Kramer aka Sophie Kramer Roth, et al.**

v.

**GARY HART & ASSOCIATES, LTD., et al.**

No. 1242, Sept. Term, 1991.

Court of Special Appeals of Maryland.

July 2, 1992.

William M. Ferris (Lynn T. Krause and Krause & Ferris on the brief), Annapolis for appellant, Deleon.

Leonard Z. Bulman, Annapolis, for appellee, Beverly Zaino, etc.

John F. Robbert (Hyatt & Peters on the brief), Annapolis, for appellees, Gary Hart and Terry Black.

Argued before MOYLAN, BISHOP and MOTZ, JJ.

BISHOP, Judge.

This action involves two appeals and one cross appeal from judgments of the Circuit Court for Anne Arundel

County (Martin A. Wolff, J.). The first appeal is between appellant DeLeon Enterprises, Inc. ("DeLeon") and appellees Beverly Zaino, individually and as Personal Representative of the Estate of Sophie Kramer, a/k/a Sophie Kramer Roth, Kramer Associates, *et al.* ("Kramers"). DeLeon appeals the decision of the Circuit Court denying its request, as the purchaser, to require the Kramers, the sellers, to specifically perform a contract for the sale of land.

The second appeal is between appellants Kramers and appellees Gary Hart & Associates, Ltd. ("Hart") and Terry Black ("Black"). The Kramers appeal the decision of the Circuit Court ordering them to pay $4,100 attorney's fees to Hart and Black. Cross-appellants Hart and Black claim the award was inadequate.

## FIRST APPEAL

### *Issues Presented*

Appellant DeLeon asks the following questions:

I. Given Maryland's unflinching adherence to the objective law of contracts, may a trial judge vary the terms of an unambiguous, integrated contract by resorting to extrinsic evidence of what one party to the contract claims to have actually intended?

II. May a trial court refuse to enforce a contract because of a unilateral mistake by one of the parties to the contract?

III. May a trial court refuse to enforce specifically a contract for the sale of real estate because, in the view of the trial judge, the contract represents a bad deal?

### *Statement of Facts*

Appellees listed the subject property, commonly known as 185 Green Street, Annapolis, Maryland ("the property") for sale with Steffey Realtors, Inc. The multiple listing service (MLS) described the property as "185 Green Street" "L[ot] S[ize] 25' × 60'" "2 Units" "2B[ed] R[ooms]."

In 1967 Edward and Sophie Kramer acquired the property and additional properties by a deed which included three parcels of land and premises. The deed was recorded in the Land Records of Anne Arundel County at Liber 2071, Folio 305. Parcel No. 3, which includes the property, is 25' × 135'. The description of Parcel No. 3 in the deed refers to "the building known as 185 Green Street," "the dwelling known as 185 Green Street," and "Known as 185 Green Street and intended to be that portion of the conveyance from ... Sarles and wife to Rosa Maggio by deed dated October 8, 1936 ... Liber F.A.M. No. 154, Folio 591...." The rear of Parcel No. 3 abuts with the rear of other properties known as 111–115 Main Street forming an "L" shape. There are two structures on Parcel No. 3. Fronting on Green Street is a structure containing two apartments and bearing the house number 185. To the rear of this structure, about mid-span of Parcel No. 3, is a fence. Beyond the fence is a second structure that connects with the back of a structure located on the 113 Main Street property. The second structure bears the house number 185½ and is used as a kitchen and for storage by Fran O'Brien's Restaurant which occupies 113 Main Street.

Terry Black, a realtor for Gary Hart & Associates, alerted DeLeon that the property was for sale. DeLeon, whose father was a title attorney for most of his adult working life and whose brother is a real estate Settlement Officer, personally went to the tax office to obtain the liber and folio number; investigated tax information and maps and the land records; obtained a copy of the deed found at Liber 2071, Folio 305 dated April 15, 1967; and viewed the property on several occasions.

The proposed contract submitted by DeLeon, was prepared by Black on a Gary Hart & Associates contract form. After negotiations on the purchase price, the Kramers accepted the contract for the price of $85,000. The contract described the property as "situate and lying in County Anne Arundel Subdivision 110 Liber 2071 Folio 305 State of Maryland being the property known as 185 Green Street

Lot 32 Block 17 Section 0291...." The Lot, Block, and Section refer to the tax map. The contract contained an integration clause.

On or about the day of settlement, the Kramers became aware of the discrepancy between dimensions of the property they intended to sell, as identified in the listing agreement, and the dimensions of the property DeLeon intended to buy, as allegedly identified in the deed description of Parcel No. 3, and refused to close.

DeLeon filed suit against the Kramers for breach of contract and sought specific performance. The trial court found that the language of the contract was ambiguous with respect to the dimensions of the property and, therefore, admitted parol evidence of the intention of the parties. It found that there was no meeting of the minds as to the description of the property and held the contract unenforceable. In addition, the trial court held that even if the language of the contract was not ambiguous, specific performance should be denied. A mistake on the part of the Kramers would result in the Kramers losing double the size of the property they intended to sell for less than half of its value. The difference in the $85,000 purchase price and $250,000 value of the property claimed by DeLeon would result in a windfall to him. DeLeon appeals from that judgment.

## Discussion

### I.

DeLeon contends that the trial judge was clearly erroneous in concluding the contract was ambiguous and abused his discretion by looking outside the four corners of the contract to arrive at this conclusion. We disagree and hold that the trial court was not clearly erroneous when it found the language of the contract ambiguous and admitted extrinsic evidence.

Specific performance must be based on a valid and enforceable contract. *Washington Homes, Inc. v. Baggett*,

23 Md.App. 167, 173, 326 A.2d 206 (1974) *cert. denied,* 273 Md. 720 and 723 (1975). Although such a contract is a prerequisite, it is not sufficient to entitle a party to specific performance. *Brooks v. Towson Realty, Inc.,* 223 Md. 61, 69–70, 162 A.2d 431 (1960).

> A contract entirely valid at law will not necessarily be enforced specifically by a court of equity.... "Facts that are not sufficient to invalidate a contract and that may nevertheless be sufficient to induce the refusal of a decree for specific enforcement are commonly segregated under such headings as mistake, innocent misrepresentation, unconscionable contract, inadequacy of consideration, harshness, oppression, sharp practice, overreaching, as well as hardship."

*Id.*

■ To grant specific performance there must be a meeting of minds. This requires that the contract be clear, certain, and definite in all its essential and material terms. *Klein v. Weiss,* 284 Md. 36, 63, 395 A.2d 126 (1978). A description of the land sufficient to enable the court to identify and locate the parcel of land definitely and with certainty is an essential term in a contract for the sale of land. *Maryland State Housing Co. v. Fish,* 208 Md. 331, 334, 118 A.2d 491 (1955) (quoting *Helmik v. Pratt,* 153 Md. 685, 690, 139 A. 559 (1927)). *See also Martin v. Michaels,* 259 Md. 346, 349–50, 269 A.2d 833 (1970).

We begin our discussion of the contract in the case *sub judice* with a review of the applicable rules of construction. General rules of construction of contracts apply to contracts for the sale of realty. *Kasten Constr. v. Rod Enterprises,* 268 Md. 318, 301 A.2d 12 (1973). "The cardinal rule in the construction and interpretation of contracts is that effect must be given to the intention of the parties, unless it is inconsistent with some principle of law[.]" *Id.* at 328, 301 A.2d 12 (citations omitted).

For the purpose of contract interpretation, Maryland applies the theory of 'objective law' of contracts. *Id.* (quoting

*Slice v. Carozza Properties, Inc.,* 215 Md. 357, 368, 137 A.2d 687 (1958)). This theory holds that the written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the subjective intent of the parties at the time the parties enter into the contract, if the language of the contract is clear and unambiguous, and free of fraud, duress, or mistake. *Kasten,* 268 Md. at 328, 301 A. 2d 12 (citing *Ray v. Eurice,* 201 Md. 115, 93 A.2d 272 (1952)). Under these conditions the intent of the parties is determined by an objective test, namely, the meaning a reasonable person would attribute to the plain language of the contract. *Kasten,* 268 Md. at 328, 301 A.2d 12 (citing *Slice,* 215 Md. at 368, 137 A.2d 687).

Where the language of the contract is ambiguous and not clear, and doubt arises from the writing itself as to what the parties meant by the language employed, extraneous evidence of what the parties intended may be admitted to assist the court in determining the agreement of the parties. *Missler v. Anne Arundel County,* 271 Md. 70, 80, 314 A.2d 451 (1974); *Hardy v. Brookhart,* 259 Md. 317, 326–27, 270 A.2d 119 (1970). "This in no way controverts the principle that the written language ... alone will govern the rights of the parties ... if that language is, on its face, clear and unambiguous." *Missler,* 271 Md. at 80, 314 A.2d 451.

In addition, Maryland employs the following rule of construction when interpreting contracts.

"It is a fundamental rule of contract construction that the entire contract, and each and all of its parts and provisions, must be given meaning, and force and effect, if that can consistently and reasonably be done. An interpretation which gives reasonable meaning to all its provisions will be preferred to one which leaves a portion of the writing useless or inexplicable."

*Orkin v. Jacobson,* 274 Md. 124, 130, 332 A.2d 901 (1975) (quoting 17 Am.Jur.2d *Contracts* § 259 (1964).

In the case *sub judice,* the contract described the property in three different ways: "situate and lying in County Anne Arundel Subdivision 110 Liber 2071 Folio 305, State of Maryland being the property known as 185 Green Street," and "Lot 32 Block 17 Section 0291." Although, land may be sufficiently described by proper reference to deeds or by a particular name by which it is known in the locality, *Maryland State Housing Co.,* 208 Md. at 335, 118 A.2d 491 (citations omitted), the descriptions in this contract are insufficient for a reasonable person to identify the parcel of land definitely and with certainty.

The deed in the case *sub judice* contains descriptions of three distinct parcels of land, only one of which is claimed to be conveyed in the contract. DeLeon claims that Parcel No. 3 in its entirety is conveyed by the contract. Yet the references to "185 Green Street" and the corresponding metes and bounds provided in the description of Parcel No. 3 refer only to a single structure—"the southeast corner of *the building* known as 185 Green Street," located at South 43° 30' West 165.02', North 46° 30' West 6.11', and "the southeast wall of *the dwelling* known as 185 Green Street" located at South 44° 23' West 26.02', North 44° 26 West 79.17'. (Emphasis added.) The reference to the other structure (the structure attached to Fran O'Brien's presently) contained within Parcel No. 3 is to "a dwelling on the herein described property" and is distinguished from the "northeast wall of 185 Green Street."

The only other reference to "known as 185 Green Street" found in the deed reads: "Known as 185 Green Street and intended to be that portion of the conveyance from ... Sarles and wife to Rosa Maggio by deed dated October 8, 1936 ... Liber F.A.M. No. 154, Folio 591...."

In *Neavitt v. Lightner,* 155 Md. 365, 142 A. 109 (1928), the Court addressed the issue of a reference deed contained within the deed actually conveying the property sold. The conveyance deed stated that the reference deed "is hereby made for a more full and perfect description of the property hereby conveyed." The reference deed described the origi-

nal tract of land as 213 acres. The deed actually conveying the property described the tract as "two hundred and twenty acres, more or less." A subsequent survey of the property established that the correct area of the tract was 179½ acres. The purchaser contended the property had been sold to him through misrepresentation, fraud, and concealment as to the number of acres and sought an abatement of the purchase price to compensate for the reduced number of acres. The Court denied relief, giving as part of its reasoning:

> "There is no doubt that a tract of land may acquire by reputation a name different from that which it bears in the patent, and may pass by such acquired name." *Huddleston v. Reynolds*, 8 Gill, 332, 336; *Cadwalader v. Price*, 111 Md. 310, 315 [73 A. 273]. Again the deed to the appellant [purchaser] was made to conform more closely to the situation of the property at the time of its sale by describing the tract conveyed as adjoining the lands of the successors in title of those similarly named in the [referenced deed]. It thus appears that the reference to the [referenced deed] "for a more full and perfect description" was a mere conveyancer's inaccuracy, and was chiefly useful as giving the chain of title. By calling the tract by name which it had acquired, and giving its boundaries ..., the property intended to be conveyed was identified, and a subsequent defective description or mistaken reference will not vitiate the contract description or defeat the conveyance as intended, but will be regarded as surplusage. *Creswell v. Lawson*, 7 G. & J. 227, 252.... As has been frequently decided, in construing the provision of a deed they must be considered as a whole, and very little stress is to be placed on words of recital and general description as to the extent of a conveyance where there is a particular description....

*Neavitt*, at 374–75, 142 A. 109. The Court found that the referenced deed was not controlling.

█ The final description of the property in the contract is a reference to the tax map. The tax map, however, does

nothing to cure the ambiguity created by the contract between the deed description and the contract description of the property "known as 185 Green Street." In addition, since the tax map clearly states that it should not be used for the purpose of providing a legal description, we decline to find that the trial court erred in excluding its use for that purpose.

In summary, the reference to the deed, Liber 2071 Folio 305, by itself does nothing to identify definitively the property to be sold by the contract for sale since it describes three distinct parcels of land only one of which is alleged to be conveyed by the contract. In addition, the description of Parcel No. 3 in the deed contains the same words used to describe the property in the contract—"known as 185 Green Street"—but uses these words only to refer specifically to the house in the southern end of Parcel No. 3 and not to the other structure or land upon which it sits. For these reasons, we hold that the trial judge was not clearly erroneous in finding that the contract was ambiguous and going beyond the four corners of the document to determine the intent of the parties. "In the event of ambiguity in the terms of a contract, the courts must necessarily look to the intentions of the parties at the time of the making of the contract." Hardy, 259 Md. at 326–27, 270 A.2d 119.

A review of extrinsic evidence is more than sufficient to support the judge's finding that the Kramers intended to sell only the dwelling known as 185 Green Street and the 25' × 60' parcel upon which it sits, including the land up to the fence that divides the front and back halves of Parcel No. 3. The listing advertizing the property in the MLS describes it as "185 Green Street" "L[ot] S[ize] 25' × 60'" "T[otal] F[eet] 1565'" "2 Units" "2B[ed] R[ooms]." DeLeon, the attorney for the estate of Sophie Kramer Roth, an employee of Fran O'Brien's, and the real estate listing agent testified to the following facts. There was a five foot high fence dividing the 25' × 60' front parcel from the rear parcel. The structure on the back parcel bears the house number 185½. It is connected to Fran O'Brien's building

addressed as 113 Main Street, and has been leased to and used by Fran O'Brien's for several years.

In addition, testimony to define the boundaries of the property by local reputation was solicited from the listing agent, who was a resident of the neighborhood, and the attorney for the estate of Sophie Kramer Roth, who at one time considered purchasing the property. They testified that they understood "185 Green Street" to consist of the front building with two apartments and the parcel of land up to the dividing fence.

The evidence is also sufficient to support the trial court's finding that DeLeon intended to purchase the entire Parcel No. 3, including both buildings numbered "185", and "185½", and the land measuring 25' × 135'. DeLeon testified to this intent, and presented deeds and tax maps upon which he relied in concluding that 185 Green Street was situated on a 25' × 135' parcel.

[7] Because the description of the property, which is an essential term in a contract for the sale of land, was not clear, certain, and definite, there was no meeting of the minds of the parties. The Kramers did not intend to sell the 25' × 135' parcel DeLeon intended to buy and DeLeon did not intend to buy the 25' × 60' parcel the Kramers intended to sell. Thus, no contract was formed and specific performance should not be granted.

> A court of equity will decree specific performance almost as a matter of course if the terms of the contract are clear and unobjectionable.... Nevertheless, the discretion of the court will be exercised to deny relief where to grant it would be to compel the defendant to perform a contract which he did not intend to make or which he would not have entered into had its true effect been understood.

*Brooks*, 223 Md. at 70, 162 A.2d 431 (quoting *Perlmutter v. Bacas*, 219 Md. 406, 411, 149 A.2d 23 (1959)).

Based on our disposition of Issue I, it will not be necessary for us to address the other two issues.

## SECOND APPEAL AND CROSS APPEAL

### Issues Presented

Kramers raise the following issues:

I. Did the trial court err in entering a judgment of sanctions against the Kramers and in favor of appellees Hart and Black, when there was no bad faith, the case was based on substantial justification and there was no adverse motive in filing the third party complaint?

II. Did the trial court err in awarding the sum of $4,100 as sanctions against the Kramers and in favor of Hart and Black?

Cross-appellants Hart and Black make the following assertions:

III. The Kramers had no substantial justification to continue litigating, and to bring to trial, a third party complaint for negligent representation and wilful misrepresentation where they had no knowledge, proof or evidence of any misrepresentation and where the party to whom the misrepresentation was allegedly made denied, prior to trial, the occurrence of any misrepresentation and further stated that even if there was misrepresentation, he did not rely upon it.

IV. The trial court did not abuse its discretion in awarding sanctions where it warned the Kramers ten months before trial that such sanctions might be imposed if the Kramers could not offer any evidence to substantiate its allegations and where it provided the Kramers with a hearing and an opportunity to justify their continuation of the third party complaint.

V. The award of $4100 for attorney's fees should be increased to fully compensate Hart and Black for the cost of defending a claim continued without substantial justification, including the cost of bringing the motion for sanctions and the defense of this appeal.

### Statement of Facts

The following facts are relevant to the second appeal and cross-appeal.

After DeLeon brought suit against the Kramers for specific performance of the contract, the Kramers filed a third party complaint against Hart and Black. In their amended complaint, they claimed that DeLeon alleged that Hart and Black intentionally or negligently misrepresented to him what was being offered for sale, and as a result DeLeon sued the Kramers. Hart and Black filed motions to dismiss and for summary judgment on the basis that DeLeon denied any reliance upon them. After a hearing, the court denied the motion for summary judgment based on the possibility that there might have been a "statement that led [DeLeon] on." The court warned Kramers' counsel that he had a duty to investigate the allegations and warned that sanctions would be awarded if the complaint was not voluntarily dismissed upon a determination that there were no facts to back up the allegations. The court instructed Hart and Black's attorney to keep a record of his time. The Kramers did not dismiss the complaint and the case went to trial. At the end of the Kramers' case the trial judge dismissed the third party complaint. He found that there was not one iota of proof that Hart and Black had described the property as being more than 25' × 60', and even if there had been, DeLeon never relied on any description provided by them.

Hart and Black filed a Motion for Sanctions and Attorney's Fees. After a hearing, Judge Wolff found that, without any evidence to support their claim, the Kramers had no substantial justification to warrant the continuation of the suit after discovery. Hart and Black, as the speakers, denied misrepresenting the parcel, and DeLeon, as the hearer, denied that he had been misled and stated that even if they had made a misrepresentation he would not have relied upon it. Judge Wolff awarded $4,100 in attorney's fees to Hart and Black.

### Discussion
### I., III., IV.

The Kramers contend that the trial court erred in entering a judgment of sanctions against them because they did

not file their third party complaint against Hart and Black in bad faith and there was substantial justification to support the Kramers' pursuit of the claim. The Kramers argue that, at the evidentiary hearing, Hart and Black presented no evidence of the lack of substantial justification, and the court ignored evidence of substantial justification. We disagree.

Maryland Rule 1–341 provides:

> In any civil action, if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification the court may require the offending party or the attorney advising the conduct or both of them to pay to the adverse party the costs of the proceeding and the reasonable expenses, including reasonable attorney's fees, incurred by the adverse party in opposing it.

This rule " 'represents a *limited* exception to the general rule that attorney's fees are not recoverable by one party from an opposing party'." *Legal Aid v. Bishop's Garth,* 75 Md.App. 214, 223, 540 A.2d 1175, *cert. denied,* 313 Md. 611, 547 A.2d 188 (1988) (quoting *Legal Aid Bureau, Inc. v. Farmer,* 74 Md.App. 707, 722, 539 A.2d 1173 (1988) (emphasis supplied)). The purpose of the rule is not to force a person with a questionable cause to abandon it but, rather, is to eliminate the initiation or continuance of litigation that is clearly without merit or abusive. *Zdravkovich v. Bell Atlantic–Tricon Leasing Corp.,* 323 Md. 200, 209, 592 A.2d 498 (1991); *Needle v. White,* 81 Md.App. 463, 470, 568 A.2d 856 *cert. denied,* 319 Md. 582, 573 A.2d 1338 (1990). *Bishop's Garth,* 75 Md.App. at 224, 540 A.2d 1175.

Before meting out the extraordinary sanction of attorney's fees the judge must make two separate findings that are subject to scrutiny under two related standards of appellate review. *Inlet Associates v. Harrison Inn,* 324 Md. 254, 268, 596 A.2d 1049 (1991). The judge must find that the proceeding was maintained in bad faith or without substantial justification, and that the bad faith or lack of substantial justification merits the imposition of attorney's

fees. *Id.* at 267–68, 596 A.2d 1049. We must affirm a factual finding of bad faith unless the finding is clearly erroneous. *Id.* at 267, 596 A.2d 1049. The trial court's determination as to whether there was lack of substantial justification is a question of law, and must be affirmed unless legally erroneous. *Id.* That the action merits an award of attorneys fees is based on the abuse of discretion standard. *Id.* The record must reflect explicitly the finding itself and the facts upon which that finding is based. *Id.* at 269, 596 A.2d 1049 (quoting *Zdravkovich v. Bell Atlantic–Tricon Leasing Corp.*, 323 Md. 200, 210, 592 A.2d 498 (1991)).

### *Lack of Substantial Justification*

The test for determining lack of substantial justification is whether the person bringing the claim had a reasonable basis for believing that the claim would generate an issue of fact for the fact finder. *Inlet Associates*, 324 Md. at 268, 596 A.2d 1049. "[T]o constitute substantial justification, the parties position should be 'fairly debatable' and 'within the realm of legitimate advocacy.'" *Id.* at 268, 596 A.2d 1049 (citing *Newman v. Reilly*, 314 Md. 364, 381, 550 A.2d 959 (1988)). A claim lacks substantial justification when there is no basis in law and/or fact to support it. *Johnson v. Baker*, 84 Md.App. 521, 529, 581 A.2d 48 (1990), *cert. denied*, 322 Md. 131, 586 A.2d 13 (1991). "[C]omplaints alleging even the most well established torts, for want of sufficient factual allegations, often do not generate a factual dispute." *Inlet Associates*, 324 Md. at 284, 596 A.2d 1049 (Robert Bell, J., dissenting). But, a case is not defended in bad faith or without substantial justification simply because the fact finder believes one party's witness instead of the other party's witness. *Bishop's Garth*, 75 Md.App. at 223, 540 A.2d 1175.

In the case *sub judice*, the Kramers alleged in their two-count third party complaint that Hart and Black misrepresented negligently or intentionally the size of the property to DeLeon, and, as a result, DeLeon sued the Kramers. To

have substantial justification to maintain their suit based upon the torts of misrepresentation, the Kramers had to have facts which would allow them to argue, in good faith, each of the elements of their causes of action.

In *Martens Chevrolet v. Seney,* 292 Md. 328, 439 A.2d 534 (1982), the Court discussed the elements of deceit or intentional misrepresentation and negligent misrepresentation. *Martens* teaches that, to support their cause of action for intentional misrepresentation, the Kramers needed to possess some evidence that Hart and Black (1) made a representation that was false, (2) knew of its falsity or made it with such a reckless indifference to truth as to be equivalent to actual knowledge, and (3) made the statement for the purpose of defrauding the injured party; and that the injured party (4) not only relied upon the misrepresentation, but had a right to rely upon it in the full belief of its truth, and would not have executed the contract had it not been made, and (5) suffered damage directly resulting from such fraudulent misrepresentation. *Id.* at 333, 439 A.2d 534.

To support their cause of action for negligent misrepresentation, the Kramers needed to possess some evidence that Hart and Black (1) owing a duty to the party bringing suit, negligently asserted a false statement; (2) intended that their statements would be acted upon by the party bringing suit; (3) knew that the party bringing suit would probably rely on the statement, which, if erroneous, would cause loss or injury; and that the party bringing suit, (4) justifiably took action in reliance on the statement; and (5) suffered damages proximately caused by Hart and Black's negligence. *Id.* at 336–37, 439 A.2d 534.

Judge Wolff found that the Kramers, after completing discovery, still had no facts upon which to base arguments on two essential elements of intentional and negligent misrepresentation, namely, that Hart or Black made the alleged misrepresentation and that DeLeon relied upon it.

The misrepresentation or false statement alleged by the Kramers, was based on purported allegations made by DeLeon that Hart and Black misrepresented to him "what was being offered for sale." They contended that this led DeLeon to believe the parcel was 25′ × 135′.

The Kramers presented no evidence that DeLeon made these allegations. DeLeon, Hart, and Black all testified that Hart and Black did not make any misrepresentations to DeLeon. DeLeon also testified that even if they had, he would not have relied upon the misrepresentation because it was his practice not to rely on real estate agents but rather to investigate on his own. DeLeon testified to the results of his personal investigation.

To support their claim that Hart and Black misrepresented the property to DeLeon, the Kramers argue that "the Listing clearly indicated that the Kramers intended to sell a parcel of land 25 feet by 60 feet". Also the Kramers contend that Hart and Black "prepared the Contract for Sale, but refused to state that they intended the contract to be consistent with the Listing;" allowed DeLeon to claim that the contract of sale intended to include a greater portion of land than 25 feet by 60 feet; and, in a third party complaint against Steffey Realtors, Inc., and in their Motions for Summary Judgment and Dismissal, allege that "Kramer and Steffey ... misrepresented ... what they were listing for sale." The Kramers should have known that these facts do not establish a basis to make a good faith argument or raise factual disputes with respect to all the elements of misrepresentation.

In addition, when asked by the trial judge "What evidence is there that Mr. Hart or Mr. Black intentionally, negligently, or in any way, told Mr. DeLeon the size of the property?", counsel for Kramer simply stated that "Black didn't tell them, and that's—that was negligence on his part because negligence is—is an omission or commission." Assuming this is accurate, the Kramers still failed to present any evidence that DeLeon relied on Hart and Black's silence. Thus, it was not a matter of the fact finder believing

one party's witness over another party's. The Kramers simply had no evidence for the fact finder to make a determination about an essential element of misrepresentation.

The trial judge made a specific finding that the Kramers lacked substantial justification to continue their suit, after discovery. He stated that he relied on evidence presented at the trial, and the sanctions and summary judgment hearings. This evidence included the deposition of Black, the testimony of DeLeon, and that "there was not one iota, not a shred of evidence that Black misrepresented to DeLeon." In his deposition, Black stated, *inter alia,* that he gave a copy of the MLS listing to the buyers; made no representations to the buyers other than as supplied on the multiple list sheet; did not believe that anything other than the Green apartment building was for sale; and never contended that more than 25' × 60' was in question until the issue arose on or about March 22, 1989. DeLeon testified that Black never represented that the property was greater than 25' × 60', but that even if he had DeLeon would not have relied on it. The judge noted that

DeLeon did it all on his own. He went to the tax office. He did all the leg work. He said he doesn't rely on real estate agents. He didn't think that they were reliable and never relied on them, other than to show him the property. And took nothing that they said, and did all his own leg work. That was his practice.

We hold the court's factual findings and application of the law to those findings were not erroneous.

### Imposition of Attorney's Fees Merited

The trial judge did not abuse his discretion when he found that the lack of substantial justification merited the award of attorney's fees. At the hearing on the Motion for Summary Judgment, held June 25, 1990, the judge warned the Kramers that they had a duty to investigate for themselves allegations that Hart and Black made a misrepresentation of the property. He further warned that sanctions

would be imposed if the Kramers did not have evidence to support their allegation after completing discovery and chose to continue with the case. At the hearing on the motion for sanctions, held in April 1991, the judge found continuation of the suit was unwarranted after discovery failed to produce evidence that Hart and Black misrepresented the property to DeLeon.

## II. and V.

 The Kramers contend the court erred in awarding the sum of $4,100 because there was no detailed evidence to support this amount. Hart and Black contend that this amount was insufficient because they were not fully compensated for the cost of defending the claim, including the cost of bringing the motion for sanctions and the defense of this appeal. We disagree with both parties and hold that the court did not abuse its discretion in awarding fees in the amount of $4,100.

When the court finds a lack of substantial justification for the pursuit of a suit, the court exercises its discretion in deciding whether to award fees. *Century 1 Condo v. Plaza Condo Joint Ven.*, 64 Md.App. 107, 119–20, 494 A.2d 713 (1985). Rule 1–341 provides only that a "court *may* require the offending party ... to pay ... reasonable expenses, including reasonable attorney's fees" and thus permits the court to "exercise its discretion not to award fees despite the existence of a predicate for so doing." *Id.* at 120, 494 A.2d 713. If in its discretion, the court decides to award reasonable attorney's fees,

> [t]he determination of the reasonable value involves a question of fact to be answered in light of the particular circumstances of each case.... The trial court enjoys a large measure of discretion in fixing the reasonable value of legal services. That amount will not be disturbed unless it is clearly an abuse of discretion.

*Head v. Head,* 66 Md.App. 655, 669, 505 A.2d 868 (1986) (citations omitted). Factors considered by the Maryland courts in determining the amount of fees that are reason-

able include labor, novelty and difficulty of the questions involved, skills, time, benefit to client, financial resources of the parties, preclusion of other employment opportunities for the attorney, local customary fee for similar services, amount involved, results obtained, time limitations, nature and length of professional relationship with the client, whether the fee is fixed or contingent, and the experience, reputation, and ability of the lawyer. *Id.* at 670–71, 505 A.2d 868.

Although consideration of these factors is appropriate, consideration of all these factors is not necessary in any given case. "Maryland courts often have determined the amounts awarded under Rule 1–341 based on '[their] own knowledge of the case and the legal effort and expertise required' and the affidavits submitted by counsel." *Johnson v. Baker,* 84 Md.App. 521, 543, 581 A.2d 48 (1990), *cert. denied,* 322 Md. 131, 586 A.2d 13 (1991) (citations omitted). The judge knows the record which discloses the nature of the proceedings and the extent of the attorney's efforts. *Head,* 66 Md.App. at 670, 505 A.2d 868. "Given this evidence, the [judge] may rely upon his own knowledge and experience in appraising the value of an attorney's services." *Id.* at 670, 505 A.2d 868 (quoting *Foster v. Foster,* 33 Md.App. 73, 77, 364 A.2d 65 (1976)). Thus, while time spent and hourly rates are important factors, they are not indispensable. *See Head,* 66 Md.App. at 670 and 671, 505 A.2d 868.

In the case *sub judice,* Judge Wolff had personal knowledge of this case. In addition, to determine a reasonable fee under the circumstances, the judge had before him the case file and other evidence presented at the sanctions hearing, including a month-by-month statement from Mr. Silverstein for October 1989 through January 1991; a month-by-month statement from Hyatt and Peters showing the hours billed subsequent to the motion for summary judgment and during the course of the trial; Black's testimony that he paid $2,000 of the outstanding bill; testimony that from January 1991 through May 1991, Hyatt & Peters

billed a total of $4,687.50 at the rate of $120 per hour for attorney John Robbert based on his 20 years of experience, and $100 per hour for attorney Grosfelt, who attended most of the trial. The judge stated that he based the award on his personal knowledge of the time it takes to set up a hearing date, read letters, review dictation; the hourly rates and experience of the attorneys; his review of the file and what work was done, how effective it was, and whether it benefited the client; and his recollection of each attorney's presence at trial.

In *U.S. Health, Inc. v. State,* 87 Md.App. 116, 131, 589 A.2d 485 *cert. denied,* 324 Md. 69, 595 A.2d 482 (1991), we refused to grant counsel fees for the preparation of appellee's motion for sanctions and attorney's fees. We stated:

> Rule 1–341 provides for recovery of expenses incurred in opposing the unjustified or bad faith maintenance of a proceeding. It does not provide for expenses incurred in asserting the claim under the rule except, perhaps, to the extent that the offending party resists the claim for counsel fees without substantial justification for doing so.

*Id.* at 131–32, 589 A.2d 485. In the case *sub judice,* we do not find sufficient evidence of bad faith or a lack of substantial justification on the part of the Kramers in resisting the claim for counsel fees.

For these reasons, we find the amount of attorney's fees awarded was well within the range of reasonable.

JUDGMENT DENYING SPECIFIC PERFORMANCE AFFIRMED. COSTS TO BE PAID BY DELEON.

JUDGMENT FOR ATTORNEY'S FEES AFFIRMED. ONE HALF THE COSTS TO BE PAID BY THE KRAMERS AND ONE HALF BY HART AND BLACK.